**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | | |
|---|---|---|
| **VICTOR D. MCMILLER** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No.: 2:16-CV-00252-PLR-CRW** |
| | ) | |
| **MIKE PARRIS[1],** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

Petitioner Victor McMiller has filed a pro se petition for a writ of habeas corpus under 28

U.S.C. §2254, challenging the constitutionality of his detainment pursuant to his Sullivan County

convictions for the sale and delivery of dihydrocodeinone, a controlled substance [Doc. 1]. After

reviewing the parties' filings and the relevant state court record, the Court has determined that

Petitioner is not entitled to relief under §2254, and no evidentiary hearing is warranted. *See* Rules

Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). For the

reasons set forth below, the §2254 petition will be **DENIED**, and this matter will be **DISMISSED**.

**I. BACKGROUND**

Evidence at trial demonstrated that on two separate occasions, once on February 11, 2008,

and again on April 23, 2008, the Kingsport Police Department used confidential informant Patricia

Wise to complete controlled purchases of dihydrocodeinone, commonly referred to as Lortab, from

---

[1] The Court notes that it appears that Petitioner is no longer in custody of Respondent, as Petitioner has indicated two changes of address, first to a different correctional facility, and next, to Matthew 25 Inc., 625 Benton Avenue, Suite 120, Nashville, TN 37204 [Doc. 21, Doc. 26]. However, as Respondent has continued to file and respond, through counsel, after these address change requests, and Petitioner has not indicated the correct new Respondent, the Court will not name a new Respondent sua sponte.

Petitioner.  *State v. McMiller*, No. E2010-01558-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 893, at *1-2 (Tenn. Crim. App. Dec. 6, 2011) ("*McMiller I*").

Ms. Wise, an admitted crack cocaine user, testified that she contacted the Kingsport Police Department after receiving felony theft charges, in hopes of providing information in exchange for clemency in her sentencing.  *Id.* at *2, 4.  She provided officers with information about her co-worker, Jessica Hooker, who was then romantically involved with Petitioner, and they arranged a drug transaction.[2]  *Id.* at *4-5.  Ms. Hooker testified that Ms. Wise asked her if she knew where to buy Lortab pills, and Ms. Hooker responded that she could get them from Petitioner, who "had a prescription for them because he had degenerative bone disease."  *Id.* at *6.  Ms. Hooker clarified at trial that while she had never personally seen Petitioner sell the pills, he had previously told her that he had sold pills and would do so in the future if she knew any buyers.  *Id.* at *7.

At trial Ms. Wise testified that she, along with Detective Scott Reed, went to meet Ms. Hooker to purchase the pills.  *Id.* at *5.  They went to Petitioner's apartment, where Ms. Hooker introduced Ms. Wise to Petitioner in the living room, and then went into the bedroom with Ms. Wise and sold her two Lortab pills.  *Id.*  Ms. Hooker confirmed that she sold Ms. Wise Lortab pills from Petitioner's apartment.  *Id.* at *6-7.  Ms. Hooker's testimony detailed that she sold Lortab tablets to Ms. Wise twice, each time from Petitioner's apartment.  During the first transaction, in January 2008, Ms. Hooker alleged that while Petitioner was not home, she later gave him the money *Id.* at *7.  During a second meeting in March 2008, Petitioner was home during the drug sale.[3]  *Id.*

---

[2] Ms. Hooker later married Petitioner but was separated from him at the time of trial. *McMiller I* at *6.
[3] Ms. Hooker pled guilty to two counts each of the sale and delivery of dihydrocodeinone. *Id.* at *7.

After the January transaction with Ms. Hooker, Detective Reed orchestrated two controlled buys of Lortab through Ms. Wise, this time purchasing the pills from Petitioner. *Id.* at *2. Detective Reed testified that on February 11, 2008, he rode to the pre-arranged location, an apartment complex, with Ms. Wise, searched her vehicle and person for drugs, attired Ms. Wise with audio and video surveillance equipment, and gave her $100 to purchase 14 Lortab pills. *Id.* at *2. Detective Reed testified that while he could not see the hand-to-hand transfer, he saw Petitioner in a white Ford Explorer, saw Ms. Wise walk over to the vehicle, and that Ms. Wise returned to her vehicle with the pills which the Detective then took and logged into evidence. *Id.* at *3. Ms. Wise also later identified Petitioner in a photographic lineup. *Id.* at *4. On the second controlled buy, on April 23, 2008, Detective Reed followed similar procedures – he searched Ms. Wise's person and vehicle, wired her with audio recording equipment, and gave her $70 to purchase ten Lortab pills. *Id.* at *3. While he did not ride to the location with Ms. Wise, he followed her to the same location as the first buy, watched her go into the residence, listened to the transaction through the recording equipment, and then as Ms. Wise left, followed her to another location where the pills were taken from her and processed into evidence. *Id.* Ms. Wise's testimony regarding these events was substantially similar to Detective Reed's. *Id.* at *5-6.

Tennessee Bureau of Investigation ("TBI") Agents Carl Smith and Ashley Cummings tested the 24 pills received in this case and identified the tablets as containing dihydrocodeinone, a Schedule III controlled substance. *Id.* at *6. Agent Smith analyzed the 14 tablets from the February transaction by identifying the logo on the tablets and using an infrared spectrometer to conclusively determine that the pills contained dihydrocodeinone. *Id.* at *11-12. Agent Cummings performed a similar analysis of the pills from the April transaction; she visually examined the tablets and performed a logo identification, as well as performing a gasometrical

mass spectrometer analysis, to discern that the tablets contained dihydrocodeinone. *Id.* at *12. She identified the tablets as Watson 385, commonly referred to as Lortab. *Id.* While neither Agent Smith nor Agent Cummings weighed the tablets, Agent Cummings clarified that "tablets aren't generally weighed as part of our examination. Basically, we get that information from our logo identification book that tells us how many milligrams of each [hydrocodone and acetaminophen] is in the tablets." *Id.* at *13.

In 2009, a Sullivan County jury convicted Petitioner of two counts each of the sale and delivery of dihydrocodeinone [Doc. 7 Att. 1 p. 20-23]. His convictions for delivery were merged into his convictions for the sale of the substance, and he was sentenced to 12 years for each conviction, to be served consecutively for an effective 24-year sentence [*Id.*].

In 2011, Petitioner appealed to the Tennessee Court of Criminal Appeals ("TCCA") alleging that the presentment against him was facially invalid, challenging the sufficiency of the evidence against him regarding both his identity as the perpetrator and the content of the drugs, and arguing that the trial court erred both in allowing testimony concerning Petitioner's prior drug sales and by imposing consecutive sentences [Doc. 7 Att. 7]. Finding no merit, the TCCA affirmed Petitioner's conviction. *McMiller I.* Petitioner then applied for permission to appeal to the Tennessee Supreme Court ("TSC"), which was denied [Doc. 7 Att. 10, 11].

Next, Petitioner filed a state petition for post-conviction relief, which was denied [Doc. 7 Att. 12 p.3-10, p. 57-65]. He appealed the dismissal of his petition to the TCCA claiming the ineffective assistance of counsel for counsel's alleged failures to (1) appropriately challenge or object to testimony regarding Petitioner's prior drug sales, (2) challenge the validity, or lack of, arrest warrant before Petitioner's arrest, (3) call Lisa Barker as a witness, and (4) communicate plea offers. *Id.* at *8. Petitioner also raised a claim that the officers arresting him did so without

a "warrant in hand," in violation of his Fourth Amendment rights, which the TCCA did not address [Doc. 7 Att. 20]. The TCCA found that counsel was not ineffective and affirmed the denial of post-conviction relief. *McMiller v. State*, No. E2014-02132-CCA-R3-PC, 2015 Tenn. Crim. App. LEXIS 992, at *16 (Tenn. Crim. App. Dec. 14, 2014) (*"McMiller II"*). Petitioner again applied for permission to appeal to the TSC, which was denied [Doc. 7 Att. 23].

Finally, Petitioner filed this petition for federal habeas corpus relief [Doc. 1]. After both the response and Petitioner's reply were filed, Petitioner filed a motion to hold in abeyance while he attempted to exhaust state court remedies, which the Court granted [Doc. 8, Doc. 9, Doc. 10, Doc. 11, Doc. 12]. Meanwhile, in state court, he filed a motion to re-open post-conviction proceedings, in which he raised several grounds of the ineffective assistance of counsel[4] and a claim that his trial was unfair because some of his issues were not raised and his witnesses were not subpoenaed [Doc. 28 Att. 1]. The court denied his motion to re-open, finding that "even taking as true the allegations set out in the motion to re-open, they fail to state a claim upon which the post-conviction petition may be properly re-opened" [Doc. 28 Att. 2 p.2]. Petitioner applied for permission to appeal this decision to the TCCA which was also denied [Doc. 28 Att. 3, 5]. On January 25, 2018, Petitioner simultaneously filed motions in this Court to lift the stay of his case, to appoint counsel, and to amend his habeas petition [Doc. 14, 15, 16]. He later filed a motion to dismiss or vacate his sentence and a motion to compel a response [Doc. 17, Doc. 23]. On October 22, 2019, the Court granted Petitioner's motion to lift stay, motion to amend his Petition, and motion to compel response, while denying his motion for the appointment of counsel and

---

[4] Two of these claims had been previously litigated in state court, while the rest were novel.

5

dismissing his motion to dismiss or vacate his sentence [Doc. 27].  The claims presented in both

Petitioner's initial and amended petitions are now before this Court.

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in

28 U.S.C. §2254, a district court may not grant habeas corpus relief for a claim that a state court

adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2).  This standard is intentionally difficult to meet.  *Woods v. Donald*,

135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).  A district court may only grant habeas

relief under the "contrary to" clause where the state court decides a question of law or materially

indistinguishable set of facts conversely to the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000).  To grant habeas relief under the "unreasonable application" clause, the Court must

find that the state court's decision was an "objectively unreasonable," and not simply an erroneous

or incorrect, application of the correct legal principle to the facts.  *Id.* at 409-11.  The AEDPA

likewise requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131,

1134 (6th Cir. 1998).  Where the record supports the state court's findings of fact, those findings

are entitled to a presumption of correctness which may be rebutted only by clear and convincing

evidence.  28 U.S.C. § 2254(e)(1).

In addition to the stringent standard for succeeding on the merits of a claim, the granting

of habeas relief is further restrained by exhaustion requirements and the doctrine of procedural

default.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S.  838, 842 (1999).  Exhaustion

requires a petitioner to "fairly present" each federal claim to all levels of the state appellate system,

including the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)[5], to ensure

that states have a "full and fair opportunity to rule on the petitioner's claims," *Manning v.*

*Alexander*, 912 F.2d 878, 881 (6th Cir.  1990); *See O'Sullivan*, 526 U.S. at 842.  If a claim has

never been presented to the highest available state court and is now barred from such presentation

by a state procedural rule, that claim is procedurally defaulted and barred from federal habeas

review.  *Wallace v. Sexton*, 570 F. App'x 443, 449 (6th Cir. 2014).  Procedural default may also

occur when Petitioner presented the claim to the highest court, but the state court was prevented

from "reaching the merits of the petitioner's claim" because petitioner failed to comply with an

applicable state procedural rule, which is regularly enforced and is an "adequate and independent"

state ground.  *Id.* (citing *Maupin v.  Smith*, 785 F.2d 135, 138 (6th Cir.  1986)); *Seymour v.  Walker*,

224 F.3d 542, 549-550 (6th Cir.  2000) (citing *Wainwright v.  Sykes*, 433 U.S.  72, 80, 84 87

(1977)).

A claim that has been procedurally defaulted may be considered on its "merits only if the

petitioner establishes cause for his failure to comply with the state procedural rule and actual

prejudice from the alleged violation of federal law or "demonstrates that his is 'an extraordinary

case, where a constitutional violation has probably resulted in the conviction of one who is actually

innocent.'"  *Wallace*, 570 F. App'x at 452 (quoting *Murray v.  Carrier*, 477 U.S. 478, 496 (1986));

s*ee also House v.  Bell*, 547 U.S.  518, 536 (2006).  To show sufficient "cause," Petitioner must

point to "some objective factor external to the defense" that prevented him from raising the issue

---

[5] However, Tennessee has clarified that presentation to the TCCA will suffice to satisfy
exhaustion requirements. Tenn. S. Ct. R. 39.

in his first appeal. *Murray*, 477 U.S. at 488. Where petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

## III. ANALYSIS

### A. Exhaustion and Procedural Default

Altogether, Petitioner now raises the following claims, as paraphrased by the Court:

1. The evidence was insufficient to support his convictions.

2. His Fourth Amendment rights were violated when officers arrested him without a warrant.

3. His counsel was constitutionally ineffective for:

   a. Opening the door and failing to object to testimony regarding prior drug sales,

   b. Failing to interview and subpoena Lisa Barker,

   c. Failing to interview and subpoena Ed Ragsdale,

   d. Failing to communicate the plea offer to Petitioner,

   e. Failing to file a motion to suppress the audio and video recordings of the drug transactions,

   f. Failing to file a motion to dismiss the presentment,

   g. Failing to timely object to the chain of custody of the tablets,

   h. Failing to raise that the detective never obtained a court order for a wire or electronic surveillance from the appropriate authority,

   i. Failing to raise that the "male detective did not follow protocol in getting a female officer to strip search the confidential informant,"

> > j. Failing to file a motion of discovery and object to the state's withholding of evidence,
>
> > k. Failing to object to the arresting officer's lack of arrest or search warrant, and
>
> > l. Failing to object to "the fact that there was no evidence at trial or the post-conviction hearing quantifying the amount of dihydrocodeinone in any of the tablets analyzed."
>
> 4. The presentment against him was facially invalid.
>
> 5. He was denied his right to subpoena witnesses.

[Doc. 1, Doc. 16]. Respondent contends that the majority of these claims have been procedurally defaulted for having never been presented, or having been improperly presented, to the TCCA or TSC [Doc. 8, Doc. 29]. This Court agrees. With the exception of claims 1, 3(a), 3(b), 3(d), 3(k), and 4, Petitioner's claims were not fairly presented to the state courts, and there is no cause for which to excuse his default.

Petitioner has presented his claims to the TCCA three times, once on direct appeal, once appealing the denial of post-conviction relief, and once in his application for permission to appeal the denial of his motion to reopen post-conviction proceedings [Doc. 7 Att. 7, Doc. 7 Att. 20, Doc. 10 Att. 1]. His claims have never been presented to the TSC, with the exception of their inclusion in his applications for permission to appeal the decisions of the TCCA on both direct appeal and post-conviction appeal [Doc. 7 Att. 10, Doc. 7 Att. 23].[6] Of the claims he now raises, only claims

---

[6] To the extent that Petitioner attempts to argue that this presentation is adequate to satisfy exhaustion, the Court notes that raising a claim "for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefore, [does not] constitute fair presentation." *Olson v. Little*, 604 F. App'x 387, 402 (6th Cir. 2015) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

1, 2, 3(a), (b), (d), (k) and 4 were presented to the TCCA,[7] rendering all other claims unexhausted. However, due to Tennessee's one-year statute of limitations and one petition rule, there are no state remedies still available so Petitioner's claims are "technically exhausted." *Engle*, 456 U.S. at 110; *See* Tenn. Code Ann. § 40-30-102. Instead, those of Petitioner's claims which have never been raised to the state's highest court and are now foreclosed from such presentation are procedurally defaulted.[8] *Wallace*, 570 F. App'x at 449.

While claim 2, in which Petitioner challenges the legality of his arrest, was raised to the TCCA in Petitioner's post-conviction appellate brief [Doc. 7 Att. 20], it is procedurally defaulted because its improper presentation to the TCCA prevented the state court from reaching the merits of the claim.[9] While the TCCA did not address this claim nor elaborate on its decision not to do

---

[7] The Court notes that Petitioner did subsume one line in his post-conviction appellate brief stating that "counsel should have subpoenaed Officer Ragsdale in order to provide proof regarding the illegal search and seizure of the Defendant," which mirrors claim 3(c), within his claim challenging the legality of his arrest [Doc. 7 Att. 20 p. 25]. However, Petitioner did not plead this claim at the post-conviction trial level, did not present Officer Ragsdale at the post-conviction evidentiary hearings, and did not specify or adequately develop this as a claim for relief on post-conviction appeal. As such, it is also procedurally defaulted.

[8] Many of these claims were raised first in Petitioner's Sullivan County Criminal Court motion to reopen post-conviction proceedings, which does not satisfy exhaustion requirements. In Petitioner's application for permission to appeal the denial of this motion, he raised a singular challenge that the trial court improperly denied his motion to reopen post-conviction proceedings without a hearing. The TCCA denied the application, finding both that Petitioner had not properly complied with procedural requirements — specifically that he had not attached a copy of the post-conviction court's order to his application — and that even if he had complied, his claims were not a statutorily proper ground on which to reopen post-conviction proceedings. This presentation, in a context in which the claims were unlikely to be considered without special reason and which did not satisfy state procedural requirements, is not sufficient to thwart procedural default. *See Olson*, 604 F. App'x at 402; *Wallace*, 570 F. App'x at 449.

[9] The state contends that Petitioner did not raise any Fourth Amendment claims to the TCCA, but he very clearly argues the invalidity of his arrest in his post-conviction appellate brief [Doc. 7 Att. 20 p. 24-25]. As is explained, this presentation was not adequate, but the Court notes

so, the Court finds that the TCCA was prevented from addressing the merits of this claim because Petitioner did not raise it in his original post-conviction petition, thus waiving this claim [Doc. 7 Att. 12 p. 3-10]. *See* Tenn. Code Ann. §40-30-106(g) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented…"); *Beechem v. State*, 2012 Tenn. Crim. App. LEXIS 458 (Tenn. Crim. App. July 2, 2012) (holding "an issue not presented in a petition for post-conviction relief may not be raised for the first time on appeal"). Dismissal on this procedural ground, which is regularly enforced, and adequate and independent, is then sufficient to foreclose federal habeas review of this claim. *See Seymour v. Walker*, 224 F.3d at 549-550.

### B. Cause and Prejudice

In order for Petitioner's procedurally defaulted claims to be considered, Petitioner must sufficiently plead cause and prejudice. Petitioner bears the burden of proving cause and prejudice, which requires him to do more than "rely on conclusory assertions of cause and prejudice…;" instead he must "present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2006). Here, even when given the leniency granted to pro se petitioners, the Court finds that Petitioner raises only the ineffective assistance of counsel as cause.

To successfully prove that counsel was constitutionally ineffective, a defendant must establish (1) that counsel's performance was deficient such that he was no longer "functioning as the 'counsel' guaranteed under the Sixth Amendment," and (2) that counsel's "performance

---

that the TCCA's lack of discussion on this claim does not indicate that Petitioner failed to raise it at all, or that it was unexhausted. *Clinkscale v. Carter*, 375 F.3d 430, 437-38 (2004).

prejudiced the defense… so as to deprive the defendant of a fair trial" and undermine the reliability of trial results. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Ordinarily, because there is "no constitutional right to an attorney in state post-conviction proceedings," the ineffective assistance of counsel in post-conviction proceedings does not qualify as "cause" to excuse procedural default of constitutional claims. *Coleman v. Thompson*, 501 U.S. 722, 725, 755 (1991). However, the Supreme Court has carved out a narrow exception to this rule that allows a substantial claim of ineffective assistance of post-conviction counsel to constitute cause for underlying claims of ineffective assistance of counsel when the state limits presentation of those claims to post-conviction proceedings or employs a procedural framework that "makes it highly unlikely… that a defendant [had] a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 18 (2012)).[10] This exception applies in Tennessee. *See Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014).

For the ineffective assistance of counsel to constitute cause to excuse Petitioner's procedural default of his claims, this Court must find that (1) the claims of ineffective assistance of trial counsel were "substantial," (2) there was no counsel or counsel was ineffective during the

---

[10] The ineffective assistance of counsel cannot then properly constitute cause for the procedural default of Petitioner's claims 2 or 5, as neither of those claims raise the ineffective assistance of counsel. *See Abdur-Rahman v. Carpenter*, 805 F.3d 710, 714-16 (6th Cir. 2015) (noting that the Sixth Circuit has only applied the *Martinez* exception to claims of ineffective assistance of counsel).

state collateral review, (3) the state collateral review proceeding was the "initial" review proceeding, and (4) the state law system requires or strongly encourages ineffective assistance claims to be raised in initial review collateral proceedings. *Trevino v. Thaler*, 569 U.S. at 423 (citing *Martinez*, 566 U.S. at 13-14, 16-17). To demonstrate that his claims are substantial, Petitioner "must demonstrate that the claim[s] ha[ve] some merit." *Martinez*, 566 U.S. at 14.

Petitioner pleads eight procedurally defaulted claims of the ineffective assistance of counsel, 3(c), 3(e), 3(f), 3(g), 3(h), 3(i), 3(j), and 3(l), in less than one-and-a-half pages [Doc. 16]. He offers few facts supporting them and almost no description of alleged prejudice, absent one statement that subpoenaing Officer Ragsdale "would have made a Difference [sic] in the out come [sic] of the Case [sic]" [*Id*. at 2]. While the Court is mindful of Petitioner's pro se status, he has not provided enough information for the Court to determine that his claims are substantial, specifically that there is merit to his claim that counsel was deficient in a way that prejudiced him and warrants exception to the doctrine of procedural default.

Petitioner has insufficiently pleaded the substantiality of claim 3(c), alleging that counsel was ineffective for failing to interview and subpoena the arresting officer, Ed Ragsdale [Doc. 1 p. 29-30; Doc. 16 p. 2]. While not clarified in his amended petition, in his original petition Petitioner claimed that Officer Ragsdale could have testified as to "the Truth [sic]," presumably referring to the alleged lack of warrant [Doc. 1 p. 29-30]. However, Officer Ragsdale was not presented at post-conviction hearings, and outside of Petitioner's own assertions, there is no indication as to what his testimony would have included. Moreover, at post-conviction hearings, trial counsel testified that after much discussion with Petitioner he did not find any deficiencies with the warrant, leading the trial court to find that counsel was not then ineffective. *McMiller II* at *7-8. While Petitioner did appeal this decision, he did not introduce the capias or warrant into evidence,

forcing the TCCA to presume the correctness of the trial court's judgment. *McMiller II* at *15-16. In short, Petitioner has presented no evidence, outside of his own imprecise words, that indicates there was any defect upon his arrest, or that Officer Ragsdale would testify to any information that benefitted Petitioner. He has, therefore, not pled a substantial claim that trial counsel was deficient for failing to subpoena the arresting officer to testify.

Claim 3(e), in which Petitioner alleges that counsel was ineffective for failing to file a motion to suppress the audio and video recordings of the drug transactions which were taken in violation of the "Wire Tapping and Electronic Act" is also not substantial [Doc. 16 Att. 1 p.1]. Petitioner does not clarify which audio and/or visual recordings he believes should have been suppressed, nor does he detail what grounds counsel should have used to suppress them. Presumably, Petitioner is referring to the Electronic Communications Privacy Act of 1986, 18 U.S. C. §§ 2510-2523, and the audio/video recordings of the drug transactions obtained by the use of the confidential informant, but Petitioner has pointed to no language in this statute or other federal law to demonstrate that such recording is a violation. Accordingly, Petitioner has not proven that there was any merit to this claim.

For claim 3(f), where Petitioner complains that counsel failed to file a motion to dismiss the presentment against him, Petitioner has not provided sufficient argument to overcome the TCCA's holding that the challenge to his presentment was meritless [Doc. 16 Att. 1 p. 2]. The TCCA found that the mischaracterization was erroneous surplusage, and that even with its removal, the crimes were still sufficiently charged. *McMiller I* at *25-26. Petitioner has not offered evidence that counsel was then ineffective for failing to object to what the state courts determined was a valid presentment, or how Petitioner's trial would have been impacted had counsel objected. This claim is not substantial.

For claim 3(g), under which Petitioner raises that counsel failed to "object to the chain of custody of the handling of the drug's [sic]," Petitioner provided no details of any alleged breaks in the chain of custody [Doc. 16 Att. 1 p. 2]. The handling of the evidence was testified to at trial by Officer Scott Reed, there are no apparent flaws in the chain of custody, and Petitioner has made no argument alerting the Court to what defect he suggests [Doc. 7 Att. 2 p. 143, 152-62]. Petitioner has therefore not demonstrated that this is a substantial claim.

In claim 3(h), Petitioner claims that counsel failed to object to the lack of court order for wire or electronic surveillance of Petitioner, or alternatively, object to the state's withholding of such court order during discovery [Doc. 16 Att. 1 p.2]. Petitioner provides no case law, nor is the Court aware of any, requiring that police seek court orders before wiring a confidential informant. Petitioner has again failed to raise sufficient argument to demonstrate that his claim in substantial.

Under claim 3(i), Petitioner challenges counsel's failure to raise that "the male detective did not follow protocol" when he failed to have a female detective strip search the confidential informant before the controlled buy [Doc. 16 Att. 1 p. 2]. However, Petitioner offers no evidence of the existence of the supposed protocol the officer violated in his search of the confidential informant, nor any case law implying that such a search was necessary. Petitioner has not demonstrated that this is a substantial claim.

In claim 3(j), Petitioner challenges the state's "withholding of evidence" that Petitioner's wife would be testifying at trial as a *Brady*[11] violation [*Id.*]. Regardless of the substantiality of this claim, Petitioner unsuccessfully raised this claim during post-conviction proceedings, and then abandoned it on appeal [Doc. 7 Att. 12 p. 5; Doc. 7 Att. 20]. The *Martinez/Trevino* exception,

---

[11] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.")

which excuses the procedural default only of claims not raised at the *first opportunity* due to the ineffective assistance of counsel, does not apply to post-conviction appellate proceedings. *See Wallace*, 570 F. App'x at 453.

Lastly, Petitioner raises claim 3(l) — that counsel was ineffective for failing to object to the insufficient evidence presented at trial [Doc. 16 Att. 1 p. 3]. On direct appeal, the TCCA found that Petitioner's challenge to the sufficiency of the evidence was meritless, as the evidence adduced at trial, which included affirmative testimony from two expert witnesses, was sufficient to prove that the drugs Petitioner sold should be classified as Schedule III controlled substances. *McMiller I* at *15. It then appears that any challenge counsel made was likely to be unsuccessful and not beneficial to Petitioner. *See, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (holding counsel is not constitutionally ineffective for not pursuing meritless claims). As such, Petitioner has not proven that his claim that counsel should have objected to the sufficiency of the evidence has any merit.

Petitioner has not provided enough evidence for any given claim to demonstrate that the claim had merit, and that counsel was thus ineffective for failing to raise it. Because the Court finds that Petitioner has provided conclusory allegations of cause and that his defaulted claims are not substantial, it cannot excuse Petitioner's procedural default to consider his claims on their merits. His non-defaulted claims will be discussed in turn.

### C. Merits Analysis

#### i. Evidence Sufficiency

Petitioner claims that his convictions were obtained without sufficient evidence to persuade a reasonable jury of his guilt beyond a reasonable doubt [Doc. 1 p. 16-21]. Specifically, Petitioner challenges the sufficiency of the evidence presented at trial regarding the drug content of the tablets

obtained by Ms. Wise [*Id.*]. Respondent contends that there was ample evidence for the jury to find Petitioner guilty on every element of the crime, including that the tablets contained the identified drug and could correctly be identified as Schedule III [Doc. 8 p. 6-11].

To evaluate challenges to the sufficiency of the evidence on habeas review, federal courts analyze "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The courts look to the evidence supporting the conviction with specific reference to each element of the crime as established by state law. *Id.* at 324 n.16. However, because the trier of fact is charged with, and in the best position for, resolving conflicts in testimony, weighing the evidence, and drawing inferences, their verdict will be given deference. *Id.* at 319. Challenges to the sufficiency of the evidence are incredibly difficult for petitioners to hurdle due to the strong deference granted to these claims, both by the jurors' verdict and the state court of appeals' consideration of this verdict. *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). To grant habeas relief, the Court must find that the jury's finding was "so insupportable as to fall below the threshold of bare rationality." *Id.* at 2065.

On direct appeal to the TCCA, Petitioner challenged the sufficiency of the evidence as to both his identity as the purveyor of the tablets, and the drug content of those tablets. *McMiller I* at *8-16. The TCCA applied *Jackson*, and state law mirroring its analysis, to determine that the evidence was sufficient. It noted that Petitioner was convicted under Tenn. Code. Ann. § 39-17-417(a)(4) and (d)(1) for the sale and delivery of dihydrocodeinone, a Schedule III controlled substance, a Class D felony. *Id.* at *10-11. Under Tennessee law, this offense requires a defendant to knowingly deliver or knowingly sell a controlled substance. *Id.* at *10. The drug involved in

this case, dihydrocodeinone, is explicitly, statutorily designated as a Schedule III controlled substance. *Id.* Specifically, the statute declares:

> (a) Schedule III consists of the drugs and other substances, by whatever official name, common or usual name, chemical name, or brand name designated, listed in this section
> ....
> (e) NARCOTIC DRUGS.
> (1) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing any of the following narcotic drugs, or their salts calculated as the free anhydrous base or alkaloid, in limited quantities:
> ....
> (C) Not more than three hundred (300) milligrams of dihydrocodeinone per one hundred (100) milliliters or not more than fifteen (15) milligrams per dosage unit, with a fourfold or greater quantity of an isoquinoline alkaloid of opium;
> (D) Not more than three hundred (300) milligrams of dihydrocodeinone per one hundred (100) milliliters or not more than fifteen (15) milligrams per dosage unit, with one (1) or more active nonnarcotic ingredients in recognized therapeutic amounts;

*Id.* at *11 (*citing* Tenn. Code Ann. §39-17-410(a), (e)(1)(C)-(D)). The court went on to note that two separate TBI agents, Agent Smith and Agent Cummings, testified as drug analysis experts about the tablets obtained through the February 11 and April 23 drug transactions. *Id.* at *11-12. Both agents conclusively identified the tablets as a Schedule III controlled substance, and neither their lab reports nor their qualifications as experts were objected to or otherwise challenged. *Id.* at *12-14. The court then held that this was a permissible use of expert testimony and was sufficient proof of the classification of the tablets. *Id.* at *14.

The TCCA's holding is neither contrary to nor an unreasonable application of federal law. There was uncontroverted proof from two unchallenged expert witnesses that the tablets purchased by Ms. Wise during each controlled buy and provided to them for analysis contained dihydrocodeinone and were classified as a Schedule III controlled substance. Petitioner makes no argument, nor is this Court aware of any precedent, that uncontradicted expert testimony is

insufficient to prove an element of a crime.[12]  Petitioner's argument then amounts to a challenge to the credibility or methodology of these witnesses or the weight given to their testimony, which the Court cannot properly consider, as the Sixth Circuit has "long held the view that 'the weight and credibility of the testimony of [a party's] expert witnesses were for the jury.'"  *United States v. Persaud*, 866 F.3d 371, 381 (6th Cir. 2017) (quoting *O'Donnell v. Geneva Metal Wheel Co.*, 183 F.2d 733, 737 (6th Cir. 1950)).  As such, "the credibility of the government's expert testimony…cannot be attacked in a sufficiency-of-the-evidence challenge, which asks whether a rational jury could rely on the expert's testimony in concluding that [Petitioner] is guilty beyond a reasonable doubt."  *Id.* at 383.  Accordingly, the Court declines to find that the state court was unreasonable in finding that a rational juror could have relied on the presented expert testimony to find that Petitioner was guilty of selling or delivering a Schedule III controlled substance. Petitioner is not entitled to relief on this claim.

### ii. Ineffective Assistance of Counsel

Petitioner raised various claims of the ineffective assistance of counsel, but as clarified above, most of them are now procedurally defaulted. Petitioner's remaining claims of ineffective assistance of counsel are: (1) counsel failed by opening the door and failing to object to testimony regarding Petitioner's prior drug sales, (2) counsel failed to interview and subpoena Lisa Barker, (3) counsel failed to convey the plea offer, and (4) counsel failed to object to the lack of warrant at Petitioner's arrest.  Respondent contends that the state court's holdings were neither an unreasonable application of nor contrary to federal law.

---

[12] Indeed, given that the "uncorroborated testimony of an accomplice may support a conviction," *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999), the Court finds it unlikely that uncontradicted expert testimony is not sufficient to prove a single element.

To successfully prove that counsel was constitutionally ineffective, a defendant must establish (1) that counsel's performance was deficient such that he was no longer "functioning as the 'counsel' guaranteed under the Sixth Amendment," and (2) that counsel's "performance prejudiced the defense… so as to deprive the defendant of a fair trial" and undermine the reliability of trial results. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Supreme Court has clarified that when a federal court reviews a state court's application of *Strickland*, which sets its own high bar for claims, "establishing that a state court's application was unreasonable under §2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "In those circumstances, the question before the habeas court is 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Id.*; *See Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .").

### a. Prior Bad Acts

Petitioner claims that counsel was ineffective for opening the door and failing to object to testimony regarding his prior bad acts — namely his prior drug sales [Doc. 1 p. 32]. Petitioner says that counsel's failure to object was not a result of any overall trial strategy, and that because the prior bad act was similar to the crime for which he was on trial, the failure to object was extremely prejudicial [*Id.*]. Respondent claims that the state court properly found that trial counsel

was not deficient because he did not, in fact, open the door to testimony about Petitioner's bad acts, and that even if he had, Petitioner was not prejudiced because the court issued a jury instruction clarifying that these bad acts could not be used to prove his disposition to commit the crime of which he was accused [Doc. 8 p. 18-22]. This Court finds that the state court's holding was not an unreasonable application of or contrary to federal law, and Petitioner is not entitled to relief on this claim.

On cross-examination, trial counsel asked Ms. Hooker, Petitioner's estranged wife, whether she had "any personal knowledge that [the petitioner] sold drugs to Pat Wise on February 11th." *McMiller II* at *11. Ms. Hooker responded in the negative, and counsel followed up asking if she saw Petitioner sell Lortabs to Ms. Wise during the April 23 transaction, to which Ms. Hooker again responded no. *Id.* Finally, counsel posed the question to Ms. Hooker, "[i]n fact you were married [to] this man, you never saw him sell Lortabs to anybody did you?" *Id.* Ms. Hooker again responded that she had not. *Id.* At this point, the state requested a bench conference and "mistakenly informed the trial court that trial counsel had just asked Ms. Hooker whether she had 'personal knowledge' that the Petitioner 'sold drugs to anyone.'" *Id.* The court allowed further questioning of Ms. Hooker, outside the presence of the jury, where Ms. Hooker testified that she did not know, before or after the transactions, that Petitioner sold to Ms. Wise on either of the dates, but that she did know that he had sold drugs "because he told [her]" and had told her the drugs were available for sale. *Id.* at *12. Based on the state's characterization of trial counsel's question, counsel agreed that Ms. Hooker's response would have been misleading, and the court allowed further questioning on this point in front of the jury. *Id.* at *12. The court did provide a curative instruction to the jury, however, alerting jurors that they may not "consider such evidence

to prove [the petitioner's] disposition to commit the crime for which he's on trial in this case." *Id.* at *13.

On direct appeal, Petitioner argued that the trial court erred by permitting this testimony. *Id.* However, the TCCA found that Petitioner's counsel had waived this issue by failing to object and noted that counsel had "opened the door to [Ms. Hooker's] testimony of [petitioner's] prior drug sales by asking her about her knowledge of it during cross-examination." *Id.* Petitioner then relied on this holding to challenge trial counsel's performance on post-conviction appeal. *Id.* On post-conviction appeal, however, the TCCA ruled that trial counsel's performance was not deficient where he did not actually open the door to Ms. Hooker's prior bad acts testimony. *Id.* at *13-14. Instead, the court found that trial counsel asked whether Ms. Hooker had personal knowledge of Petitioner's selling to Ms. Wise, or whether she had *seen* him sell drugs to anyone, which the prosecutor combined in arguing that trial counsel opened the door. *Id.* at *14. The TCCA then ruled that as asked, counsel's question did not open the door, and that counsel thus committed no error in this regard and was not deficient. *Id.*

Here, the crux of the TCCA's holding did not turn on its interpretation or application of *Strickland*, but rather on its factual finding that counsel did not, in fact, open the door to testimony regarding prior drug sales. Therefore, the question before this Court is whether the record supports the state court's finding of fact and, if so, whether Petitioner has rebutted the presumption of correctness entitled to that finding by clear and convincing evidence. *See* 28 U.S.C. §2254(e)(1). The record demonstrates that trial counsel asked the questions exactly as iterated by the TCCA, and that he did not actually ask Ms. Hooker whether she had personal knowledge of any drug sales

by Petitioner [Doc. 7 Att. 3 p.75].[13]  Petitioner has provided no evidence or argument to the contrary.  The Court thus cannot find that the TCCA's decision was based on an unreasonable determination of the facts.

Moreover, even if counsel's questions were in error, Petitioner cannot demonstrate prejudice where the court offered an immediate instruction limiting the use of this information, which the jury is presumed to have followed.  *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987).  Because the Court finds neither deficiency nor prejudice, the TCCA's holding that counsel was not ineffective is not an unreasonable application of federal law.

As to Petitioner's contention that trial counsel should have objected to the testimony, the Court finds that Petitioner has not shown prejudice.  To demonstrate prejudice, Petitioner must show that but for counsel's error, the outcome of trial would have likely been different.  *Strickland*, 466 U.S. at 694.  Given the trial court's understanding and ruling allowing the testimony, it is unlikely that objection would have been successful.  Even had the objection been sustained and this evidence prohibited, there was ample evidence against Petitioner for the specific drug transactions charged in this case that the outcome was not likely to be different.

---

[13] Whether counsel's question, as asked, did open the door to further testimony is a question of Tennessee evidence law, and is then "no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state court determinations on state law questions."  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  State court evidentiary rulings only rise to the level of constitutional violation when they undermine the fundamental fairness of a petitioner's trial.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).  Ms. Hooker's testimony remained that she never saw Petitioner sell drugs to Ms. Wise or anyone else, and that he had not told her he sold drugs to Ms. Wise.  Her testimony indicating that Petitioner had told her that he previously sold drugs was not egregiously prejudicial such that it undermined the fairness of Petitioner's trial, particularly when Ms. Hooker had already indicated on direct examination that she had sold Petitioner's drugs with him present.

### b. Lisa Barker

Petitioner claims that both trial counsel and post-conviction counsel were ineffective for failing to interview and subpoena Lisa Barker, Petitioner's parole officer, despite Petitioner's request that counsel do so [Doc. 1 p. 34]. Petitioner claims that prior to the events leading to his charges, he had told Ms. Barker that Ms. Wise had voiced intent to "set [Petitioner] up" if he would not have intimate relations with her [*Id.*]. Petitioner claims he asked Ms. Barker to make a note of this in case anything should happen [*Id.*]. The State responds that the TCCA's determination that counsel was not ineffective was not contrary to or an unreasonable application of clearly established federal law because it rested on counsel's testimony that he interviewed Ms. Barker and determined she would not make a good witness, making this a strategic decision which is virtually unchallengeable [Doc. 8 p. 25].

Petitioner raised this issue post-conviction and on post-conviction appeal [Doc. 7 Att. 12 p. 5-6; Doc. 7 Att. 20 p. 26]. He contended that Ms. Barker could have detailed the events above and stated that he was doing well on parole and was an exemplary parolee [*Id.*]. However, at post-conviction hearings, trial counsel testified that he did interview Ms. Barker and determined that she would not make a good witness, as she would testify that Petitioner was not doing well on parole [Doc. 7 Att. 12 p. 59; Doc. 7 Att. 12 p. 19]. Specifically, Ms. Barker said that Petitioner was noted to have been selling drugs again [*Id.*]. The TCCA found that as such, counsel's decision not to call this witness was a "reasonably based trial strategy" that it "would not second guess." *McMiller II* at *15.

The state court's crediting of trial counsel's testimony that he interviewed Lisa Barker and his assertion that she would not have been a favorable witness is not a decision this Court is in the position to reweigh. *Persaud*, 866 F.3d at 381. The Court presumes, then, that counsel's decision

not to call Ms. Barker was indeed a calculated decision that is virtually unchallengeable under *Strickland*. *See Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (holding "strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation."). The court cannot find that there is no rational argument that counsel's performance satisfied constitutional mandates, and thus, Petitioner is not entitled to relief on this claim.

### c. Plea Offer

Petitioner claims that he never received information regarding any plea deal from the state, and that if he had, "he would have excepted the plea and risked going to trial" [Doc. 1 p. 38]. The Court assumes Petitioner means this to say that he would have pleaded guilty. The Respondent again maintains the state court's determination that counsel was not ineffective was not an unreasonable application of federal law [Doc. 8 p. 25-26].

On post-conviction appeal, Petitioner challenged that trial counsel never discussed any plea deal from the state [Doc. 7 Att. 20 p.27]. At post-conviction hearings, trial counsel testified that he was certain he conveyed plea offers from the state, and that Petitioner was "adamant from the get-go that… the confidential informant in this case had no credibility and the jury would simply not believe a word she said and this case would be beat" [Doc. 7 Att. 12 p.22-25]. In addition, trial counsel produced evidence that Petitioner had expressly written to him "no plea bargan [sic]" [Doc. 7 Att. 14 Ex. 5]. Finding that there was explicit testimony from trial counsel and letters that demonstrated trial counsel's conveyance of the plea offers as well as Petitioner's rejection, the TCCA ruled that this issue was without merit. *McMiller II* at *15-16.

Petitioner correctly points out that counsel has an affirmative duty to communicate plea offers as it is for defendants, not counsel, to decide whether to accept. *See Missouri v. Frye*, 566

U.S. 134, 135 (2012). Petitioner's claim involves a factual determination, whether counsel did convey the plea offer, that requires a credibility determination between competing witnesses. Federal courts sitting in habeas are not appropriately positioned for such determinations. Given that the record in this case supports the TCCA's finding, its holding was not based on an unreasonable determination of the facts or an unreasonable application of law. Petitioner is not entitled to relief on this claim.

### d. Arrest Warrant

Petitioner claims that trial counsel was ineffective for failing to object to Petitioner's warrantless arrest despite Petitioner's many requests that he do so [Doc. 1 p. 29]. Respondent, however, holds out that there was a valid warrant for Petitioner's arrest at the time of his arrest, and that the TCCA was then not unreasonable in finding that counsel was not ineffective for failing to object on this ground [Doc. 8 p. 11-15].

In his post-conviction petition, Petitioner argued that counsel was ineffective because he "did not investigate to see if the Police Department had an Arrest Warrant, when they went into the Defendant's House illegally" [Doc. 7 Att. 12 p. 7]. Petitioner then immediately stated that "[d]efendant's attorney also did not check to see why there were two Warrant's [sic], served on the Defendant, when it only takes one" [*Id.*]. The post-conviction court found that counsel was not deficient, as he had "discussed the validity of the arrest warrant on several occasions" and found the warrant to be valid. *McMiller II* at *7-8. In his post-conviction appeal, Petitioner challenged the validity of his arrest, which the TCCA read as a challenge to counsel's failure to challenge the validity of the warrant [Doc. 7 Att. 20 p. 24]. *Id.* at *14. However, here, the TCCA found that it was bound to "presume the lower court's ruling that trial counsel was not deficient in

this regard was correct," because Petitioner had introduced neither the capias nor the warrant into evidence and had thus not proven his allegations by clear and convincing evidence. *Id.* at *14-15.

Petitioner has unsuccessfully demonstrated that he was arrested without a warrant where the trial court found that there was a valid capias for his arrest [Doc. 7 Att. 13 p. 54]. Because the Court cannot discern any issues with the warrant, it cannot find that the TCCA unreasonably applied *Strickland* in finding that counsel was not ineffective for failing to object to the circumstances surrounding Petitioner's arrest.

### iii. Presentment

Finally, Petitioner alleges that due to mistakes contained within, the presentment against him was facially invalid [Doc. 1 p. 39]. Respondent argues that this claim is procedurally defaulted because Petitioner raised it to the state courts under a different constitutional theory [Doc. 8 p. 27-30]. In the alternative, Respondent claims that Petitioner is not entitled to relief "because it has been long established that the federal right to presentment or indictment by a Grand Jury does not extend to the states through the Fourteenth Amendment" [*Id.*].

Petitioner first raised this claim on direct appeal [Doc. 7 Att. 7 p. 27-29]. He argued that the presentment against him was invalid as it incorrectly charged Petitioner with a "Class 'C' felony" when the charges against him should have correctly been a "Class 'D' felony" [*Id.*]. Petitioner claimed that due to this error, the court was not "in a position to enter an appropriate judgment," which then rendered the presentment facially invalid [*Id.*]. He cited no federal case law or state cases applying federal analysis. His lone implication of the federal nature of his claim was in the caption where he argued that the presentment was invalid under the Sixth and Fourteenth Amendments [*Id.*].

In its analysis, the TCCA first noted that:

> After the jury was sworn in this case, the State moved to amend the presentment. The prosecutor noted that the presentment erroneously classified the charges as Class C felonies, rather than Class D felonies. Defense counsel objected to the amendment. The trial court noted that the erroneous classification was "surplusage," and that it did not impair Defendant's ability to defend himself, but that the court could not allow an amendment to the presentment without Defendant's consent because jeopardy had attached. Therefore, the court denied the prosecutor's request. The court stated, "I don't find that it in any way prejudices the defendant, the fact that it says a C as opposed to a D."

*McMiller I*, at *24.  The TCCA went on to find that in Tennessee, an indictment or presentment must "state the facts constituting the offense in ordinary and concise language…in a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." *Id.* at *24-25.  Surplus language will not render the instrument defective, if after removing the surplus language, the offense is still sufficiently charged. *Id.* at *25.  The court determined that Petitioner was not entitled to relief, finding that the classification of the offense is not a statutorily required element of the indictment, and that as such, the incorrect classification was non-necessary surplusage. *Id.* at *26.

In his original federal habeas petition, Petitioner raised this claim using almost exactly the same language he used on direct appeal [Doc. 1 p. 22].  However, he did not cite the Sixth or Fourteenth Amendment, but instead included Fifth Amendment language that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury" [Doc. 1 p. 22].  Respondent argues that this leaves Petitioner's claims procedurally defaulted because he did not raise the "same claim under the same theory" as was raised to the state courts [Doc. 8 p. 27].  The question of whether this claim is exhausted or procedurally defaulted is a complex one that need not be addressed, as the Court will deny this claim on its merits as permitted by 18 U.S.C. §2254(b)(2).

Petitioner cannot demonstrate that the TCCA's holding was unreasonable. The Sixth Circuit has indicated that where the charging instrument has given fair notice, Petitioner is not entitled to habeas relief. More specifically,

> The Due Process Clause of the Fourteenth Amendment does not require of the states as it does of the United States that defendants be indicted by a grand jury. *Hurtado v. California*, 110 U.S. 516, 537-38 (1884). Further, the sufficiency of an indictment does not normally present a cognizable issue in federal habeas corpus. *Via v. Perini*, 415 F.2d 1052, 1054 (6th Cir. 1969). However, the method of the criminal charge must observe the procedural due process requirement of fair notice of the specific charge and a reasonable opportunity to defend himself against it. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In re Oliver*, 333 U.S. 257, 273 (1948); *Watson v. Jago*, 558 F.2d 330, 338-39 (6th Cir. 1977).

*Graham v. Engle*, 1982 U.S. App. LEXIS 12354 at *3-4 (6th Cir. 1982). While the presentment in Petitioner's case did incorrectly list the charges as Class C felonies rather than Class D felonies, the presentment explicitly stated that Petitioner was being charged with both "unlawfully, feloniously and knowingly" selling and delivering "Dihydrocodeinone, a Schedule III Controlled Substance, contrary to T.C.A. §39-17-417." The Court cannot find that this presentation is so inadequate as to deprive Petitioner of fair notice or a reasonable opportunity to defend himself. As such, the Court does not find that the TCCA's holding was contrary to federal law, and Petitioner is not entitled to relief on this claim.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may

appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not disagree that Petitioner's detainment is not in violation of the Constitution or other federal law. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**